MONROE, J.
Plaintiff alleges that, acting-through Ivy I. Davis, it sold and delivered' to defendants, a firm domiciled at Marseilles, in France, and represented in New Orleans by J. F. Lafont, 30,000 pipe staves, contained in the barge B. & D., that Lafont paid $100 for towage, and that there is still due $4,900, with interest, for which it prays judgment.
The answer is a general denial.
The facts, as we find them from the evidence in^the record, are as follows: In June, 1898, Ivy I. Davis entered into a contract with J. F. Lafont, agent at New Orleans of B. Gairard, Fils, of Marseilles, whereby he agreed to deliver, within the following 12 months, 1,000,000 pipe staves. In the course of the execution of this contract, Lafont advanced money to enable Davis to get the *131 staves out, and the advances were at all times in excess of the deliveries. In the spring of 1899, Lafont made contracts for freight room on certain sailing vessels for a very large number of staves which Davis was to furnish, and Davis had collected a portion of them in barges, at Monroe and elsewhere, and had contracted for the tow-age of a certain number of barges to the city of New Orleans. It seems, however, that, by reason of accident or otherwise, he did not have as many staves as were needed by Lafont, or as many barges as he had contracted to pay towage for, and he therefore negotiated for the purchase of a barge load of staves belonging to O. R. Wharton, who was represented in the transaction by W. M. Green. Not having the cash required, which was something over $3,100, he called upon his brother-in-law, R. B. Blanks (president of the plaintiff bank), with whom he was otherwise connected in business, and, it being agreed that the staves should be bought for their joint account, Davis gave his check for the amount of the price, which, by the direction of Blanks, was paid by the bank and charged to the account of Blanks & Davis. Thereafter Davis informed Lafont that he had a barge load of staves in which Blanks was interested, but which he could deliver on his contract, provided enough money was advanced to cover that interest or to “disinterest” Blanks, and Lafont, who, for some reason of his own, objected to having any direct dealings with stave dealers in Monroe, agreed to advance the amount required for that purpose by honoring Davis’ draft therefor, with bill of lading attached, for the barge in question. Davis, accordingly, drew on Lafont for $1,953.73, the bill of lading was attached, the draft was paid, and the barge was delivered to Lafont, with some 10 or 11 other barges, which were delivered under Davis’ contract. A few weeks after-wards, however, Davis gave Blanks an order on Lafont requesting the latter to settle with Blanks for the barge in question, which Lafont refused to do, on the ground that he had already settled with Davis, and, some 18 months later, this suit was brought by the Merchants’ & Farmers’ Bank, asserting, as has been stated, that it was the vendor of the staves.
In support of this pretension, Davis testifies that when the barge was being unloaded he told Lafont that it belonged to the bank, and Blanks testifies that it had been pledged to the bank to secure the money advanced to pay the check given by Davis for the purchase price, and that the bank had taken possession by placing a watchman on the barge whilst it was lying in the Ouachita river, at Monroe.
Davis also sw-ore, however, that he never gave the draft for $1,953.73, the signature to which was subsequently admitted, and the payment of which is proved, and he made other statements which were equally erroneous. And his testimony to the effect that he told Lafont that the bank owned the staves is at variance with all the facts of the case, and is flatly contradicted by Lafont, who swears that the bank was never mentioned. As to the testimony of Blanks, neither the books of the bank nor anything else, in writing, indicates any pledge of the staves. On the other hand, the books of the bank show that the wages of the watchman were charged to Blanks & Davis, and Blanks testifies that he authorized Davis to bring the staves in question to New Orleans and to sell them to whomsoever he pleased. It is admitted that the order from Davis which Blanks presented. to Lafont was in favor of Blanks, individually, and it is not pretended that, he professed to represent the bank when he presented it.
Beyond this, after the staves in question had been shipped abroad by Lafont, and after he had refused to honor Davis’ order, that he should settle with Blanks for them, he paid Davis, on his contract, some $15,000 or $20,000, and, later still, he had a settlement with Davis, in which the latter gave his note for some $8,000, in recognition of a balance for that amount found to be due by him, and Davis said nothing about the staves for the price of which this action is brought. In view of these facts, we are of opinion that the judgment appealed from rejecting th'e plaintiff’s demand is correct, and it is accordingly affirmed.